Good morning. Thank you, Your Honors. Good morning. May it please the Court, Nimi Aviad and Emily Guajara, on behalf of Appellant Ceferino Ordon Olivar, Jr., if it's acceptable to the Court, I will be addressing first the issue of illegal procurement and misrepresentation, and Ms. Guajara will be addressing jurisdiction. How much time do you—how do you want to split up your time? We'll each take six minutes, and we'd like to reserve three minutes for rebuttal. Gotcha. Thank you. Your Honors, as it relates to the alleged illegal procurement of citizenship, this appeal raises two issues. One, did Mr. Olivar commit an unlawful act before he became a United States citizen? And two, can a district court add to the enumerated grounds that destroy good moral character? Your Honors, we submit that the answer to both of those questions is no. Well, Counsel, there's a curiosity when you're dealing with a conspiracy because the conspiracy actually consists of the agreement. So if today Judge Silverman and Judge Ezra and I back here decide we want to rob a bank, then our conspiracy would begin today, even if we didn't commit an overt act until a year from now when we, you know, run out and buy our weapons and case the joint. So once we are convicted of that, doesn't the conviction cover this whole time period starting today? Well, Your Honor, obviously this is the issue in the case and we submit that it does not. But isn't that sort of hornbook law about conspiracy and what's illegal about conspiracy? And once he stands convicted, the conviction covers that whole time period as a matter of law, doesn't it? Well, we submit that actually we can learn something from conspiracy law as to why the The overt act is important as an element to differentiate idle chatter from something that's going to go somewhere. But once it's going to go somewhere, the idle chatter is no longer idle. That is correct, Your Honor. But in our case, given that we're dealing with immigration law, given what we're dealing with, eligibility for citizenship, we are ordered by Congress to look at the statutory period that the application for naturalization and ends with the taking of the oath. Now, in that period, when Mr. Olivar took the oath of allegiance, he was not, based on the evidence that we have from the trial, he was not a criminal. He did not commit an unlawful act. Now, to say later on something happened that made him a criminal back then, that we believe, well, first of all, it's wholly impractical to administer citizenship that way. We also feel that it goes against the idea that was pronounced, for example, in John McCain's. So somebody could decide to engage in four or five illegal conspiracies to smuggle drugs, smuggle aliens, do a whole bunch of stuff and say, but hold off. I'm going to become a citizen next week, and then we'll start buying the guns, and that's okay? Well, Your Honor, he can also decide not to go forward with the agreement, and that's exactly the principle that is at the basis of modern conspiracy law, that we are allowing the person who agreed to commit a crime the chance to go back and not follow through on the conspiracy, because until and unless there is an overt act in furtherance of the conspiracy, there is no crime. But if he didn't commit the overt act, if there was no overt act, and or if he withdrew from the conspiracy, then we wouldn't be here in the first place. He never would have been convicted. That's very true, Your Honor. So it's kind of a circular argument, isn't it? Absolutely. It is a circular argument. But that doesn't help you. It doesn't help you because he was convicted, meaning he did commit the overt act, and the conspiracy started before he obtained citizenship. That's understood, Your Honor. However, there is a bright line that the cases all talk about, and the bright line is when the person takes the oath. And so if when the person takes the oath, if at that point in time, going backwards the statutory period, he did not commit a crime, he is eligible to take that oath. Now, after that point in time, if he is found to be guilty of a crime, then he is indicted and tried and convicted as an American citizen, and he pays his due if he's convicted. In our appellant relief, that's exactly what happened. He was convicted. He went to jail for a year and a day. He suffered grave consequences after that period of time. But we believe that that does not mean that he should be deprived of his citizenship. Let's assume he didn't commit the crime until he committed the overt act. Yes, Your Honor. What about the fact that he, as Judge Graver said, entered into an agreement prior? Doesn't that bear on his good moral character? Well, that's a good point. And we believe that that's what the district court has said, that an agreement to commit an act independent of anything that happens after that is enough to destroy good moral character. Is what, I'm sorry? Is enough to destroy good moral character. That's what the district court found. Now, we believe that that is an abuse of the Court's discretion because under the scheme that Congress enacted, there are specific enumerated acts, behaviors that can destroy good moral character. And then there is a catch-all provision that specifically leaves a gap for the agency to fill. And the agency indeed filled that gap with another list, longer list of acts that could destroy good moral character. Once that happened, there is no room for the court to come in and say, well, I want to add another. Well, one of those grounds is being involved in the smuggling of persons into the United States. I'm paraphrasing. But why doesn't it fall within that? Because it was a conspiracy to commit immigration fraud. To which paragraph is Your Honor referring to? Because I believe it says involved. 8 CFR Section 316.10B2.8. Yes. So, as I said, until there was actually an action to act on the agreement and say smuggling aliens. So you don't think he was involved in smuggling aliens until the overt act occurred? That's our position, Your Honor. So you're making the same argument about that? That's our position, Your Honor. And I believe that if you look at the rest of that longer list of actions, they all talk about, well, the majority of them talk about convictions, not even just commissions of the crime. And then that last catch-all talks about the commission of an unlawful act. And so when I agree to commit an act, that does not mean that I committed it. That is the very basic principle that underlies the law of conspiracy on us. I see you're down to seven minutes, and I know you wanted to leave some time for your colleague. Yes. Thank you, Your Honor. Thank you, Your Honor. Good morning. Good morning. I'd like to address the issue of jurisdiction. Could you give us your name for the record, please? Emily Kuwahara. Thank you. This issue comes down to a very simple principle, and that is that Congress says what it means and it means what it says. And in AUSC Section 1451, Congress clearly stated that for denaturalization proceedings like this one, it shall be the duty of the United States attorneys for their respective districts to institute proceedings in any district court. Now, didn't the U.S. attorney in this case give written consent for the initiation of this proceeding? Yes, Your Honor. The U.S. attorney signed a letter authorizing that. Okay. Well, why isn't that instituted by the U.S. attorney then? I mean, what you're doing, it seems to me in your argument, is elevating form over substance in a big way. I mean, it would be perhaps a different case if the U.S. attorney had declined and said, no, I'm not doing this, there are reasons why I'm not going to do this, and someone else intervened, then we'd maybe be off and running. But why isn't that essentially the U.S. attorney doing it? Your Honor, there are a couple of reasons. First, the letter itself cannot override the requirements that Congress has set forth in the statute. For whatever reason, Congress has provided a clearly defined procedure. But it doesn't say exclusively. It shall be the duty exclusively of the U.S. attorney. I mean, we're all assuming that, or at least I'm assuming it for the purpose of my question, but how literally do we have to read the part about literally walking down to the courthouse and filing the complaint? Well, Your Honor, we submit that denaturalization is an extremely high-stakes matter. The Supreme Court has recognized that denaturalization may result in the loss of all that makes life worth living. And in that case, we submit that all we're asking the government to do is to follow every step that Congress requires that it take. And we would submit that you have to follow it very literally, because this is the procedure that Congress has established both to protect the government and the citizen who is subject to being stripped of his citizenship. Suppose you're right. Why wouldn't this be harmless error in any event? Dealing with a denaturalization procedure, the lack of jurisdiction would not be considered harmless error. We do not know if the U.S. attorney had to sign his or her name on that pleading. We do not know if the result would have been different or the same had the U.S. attorney's office been involved in litigation.  Ms. Goldman, you haven't carried your burden of showing this is reversible error. With lack of jurisdiction, Your Honor, it's not whether it's harmless error or not. It's whether the statute has been complied with. And your view is if it hasn't been complied with, the court lacked jurisdiction, and it doesn't matter if it was harmful or not, because that's how I understand your argument. But so I'm not sure. Does the statute mention jurisdiction? The statute does not mention jurisdiction, Your Honor, but in other cases that have addressed the statute, for example, United States v. Zucca, where the Supreme Court considered whether or not the affidavit was a prerequisite to file a lawsuit, it was considered an issue of jurisdiction. What would your argument be if an assistant U.S. attorney had written the letter? I mean, the assistant U.S. attorney initiated it instead of the U.S. attorney. Would you have the same argument? No, Your Honor. Well, but, you know, counsel, it says U.S. attorney. It doesn't say U.S. attorney and or his or her assistants. I think there are statutes that allow, well, Your Honor, first on the pleading itself, the U.S. attorney's name would appear. Oftentimes assistant U.S. attorney would serve as a contact point for the office. But because the U.S. attorney then delegates their authority to their assistants. That is correct. But here the point Judge Graber was asking you about was what's wrong with delegating the authority over to someone else if they choose to do so? Your Honor, we have not been able to identify a single statute that permits the United States Attorney's Office to delegate that authority to the Attorney General's Office. As the Supreme Court in the United States v. Zucca was looking at the issue of whether or not the United States Attorney's authorization to institute denaturalization proceedings comes from the general duty to prosecute all civil actions versus 8 U.S.C. 1451. And the United States Supreme Court concluded that, and as this Court has also recognized in Scorbuck v. Reno, that 8 U.S.C. 1451 is the exclusive measure and covers the whole ground with respect to denaturalization proceedings. And so for that reason, what follows is that the Congress did not give this power to the Attorney General's Office. And in fact, all the internal memoranda we've been able to find recognizes that the U.S. Attorney's name must appear on the pleadings. In fact, if they were following those internal procedures, OIL, the Office of Immigration Litigation, did not follow its own internal procedures because the authorization letter from the United States Attorney includes the use of his or her name on the pleadings and all motions memorandum filed with the Court. I see you're down to a minute and 40. Your colleague said you wanted to reserve time. Thank you. Thank you. May it please the Court, Ari Nazaroff from the Office of Immigration Litigation on behalf of the United States. What this Court would do if the Justice Department brought a case without consulting with the U.S. Attorneys, not before this Court? The U.S. Attorney reviewed our letter laying out the case and the Affidavit of Good Cause and signed off on us representing. You know, looking at this, I guess my one concern is this. The Supreme Court has said this is a section that we're going to look at pretty literally and in favor of the citizen who's being denaturalized. And it does say that it's the duty of the U.S. Attorney to institute the proceedings in the place where the person resides. I'm paraphrasing. But did the U.S. Attorney institute these proceedings when he didn't sign the paperwork? He did institute these proceedings. He did not delegate his powers to institute proceedings. He instituted it. On page 240 through 242 is the letter we sent laying out the case to the U.S. Attorney and the Affidavit of Good Cause we filed with the complaint. He has read it. He has reviewed it. He authorized it. And then we – and he also authorized me, Ari Nazaroff. My name is in that letter. He authorized me to bring this case. And so the bottom line is he instituted proceedings in this case. He delegated me to do the day-to-day filing and bringing the case. I'd also like to point out my opponent mentioned that there's no statute to delegate to DO to the Department of Justice. Under 28 U.S.C. 517, the Attorney General can send any attorney from anywhere to anywhere within the federal system. Yes, but that deals with suits that are pending. And the question here is who institutes the suit before it is pending. So they're not really about the same topic, it seems to me. Well, it talks about the interest in the United States. And in a situation like this, it is within the interest of the United States to bring a denaturalization. But that's not what it's – if we're looking at the text, it says to attend to the interests of the United States in a suit pending in a court of the United States. So it's not just broad-range interests anywhere they may be found. There has to be a suit pending. Well, it says at the end, or to attend to any other interests of the United States. Again, to bring a denaturalization case would fall under that language. Again, Your Honor, the U.S. attorney followed the statute in this case. He reviewed our letter. He reviewed the fact that I would be bringing the case. He reviewed the affidavit of good cause, and he signed off on it. He did not delegate his authority to institute proceedings. He delegated his – he delegated for me to file the day-to-day bringing of the case. What good reason is there that he didn't sign the complaint and then turn it over to you? Well, he – I mean, it seems like that would have solved this problem. We wouldn't be talking about this if he had done that. It is our practice to put the U.S. attorney on the pleadings. I did not put him on the pleadings. But, again, he instituted this proceeding by signing off on the authorization letter in this case. And throughout the case, the U.S. attorney was informed of what was going on. Assistant U.S. attorneys were informed. And after the trial, the first place we went was the U.S. attorney's office to update them on the trial. I met with the civil chief. For whatever it's worth, for future reference, I think it would be a better practice to have the U.S. attorney sign the complaint. Yes, Your Honor. Thank you. I would just like to very quickly, in the time that I have remaining, address the statute 8 U.S.C. 1101F, the catch-all provision. My opponent has argued that if you don't fall into 1 through 9, you have good moral character. There's a catch-all provision under which Judge Klozner found lack of good moral character. And that's under 101F, and it says, The fact that any person is not within any of the foregoing classes shall not preclude a finding that, for other reasons, such a person is or was not of good moral character. That is the catch-all provision. And Judge Klozner used that good moral character finding to find that there was a lack of good moral character. Was that permissible when that wasn't one of the stated grounds in the complaint? I thought the stated grounds in the complaint were unlawful acts and misrepresentation. We brought the complaint. I'm sorry, I don't have the complaint in front of me right now, but it was under that statute and good moral character. Right, but you have to tell the person precisely what you're doing. And I thought that count 1 was about unlawful acts, and I thought that count 2 was about misrepresentation. I may be misremembering, but that's... I believe we, in the complaint, reference 101F, and in the affidavit of good cause attached to the complaint, I am certain I don't have that in front of me right now. We spoke of lack of good moral character. But the most important thing here, Your Honor, is that Judge Klozner found a lack of good moral character. And there's facts in support of that because there's no dispute that Mr. Olivar joined this conspiracy before he naturalized. In 2001 he joined it. That's right, Your Honor. And Judge Klozner found that, and they have not shown clear error in that decision. They have not shown it. There's evidence to support it, and this data decision must be affirmed. For those reasons, Your Honor, we ask that you dissolve the stay in this case and affirm the district court judgment. If there are no further questions, the government will rest on its feet. Thank you, Mr. Nesro. Mr. Rabiot. Thank you, Your Honor. Very briefly, first of all, Your Honor is right that they did go on the ground of an unlawful act to prove illegal procurement. Well, a conspiracy is an unlawful act. I understand that, but there was no conspiracy committed when Mr. Olivar was naturalized. Oh, okay. We're back to Judge Graber's question. If three guys get together and decide, or four guys get together and decide they're going to rob banks, and then one guy says, well, I've got some other things going on, let's wait, but we're definitely doing it, and then the guy gets naturalized, and then they rob a bank two weeks later, I mean, it's very hard to argue that, you know. I can tell you for sentencing purposes in the federal system, we look back to where the conspiracy began. Absolutely, Your Honor, and Your Honor is correct. For sentencing purposes, that is indeed the law, and the level of proof is lower than the level of proof needed to prove denaturalization. Let me ask you one other thing. It is true that the judge relied on the catch-all as well, and that that wasn't the specified basis in the complaint. Is that permissible? No, it is not, Your Honor, and with your permission, I would like to cite from this Court's ruling in the United States v. Gang, where this Court said, a plain reading of the statute indicates that Congress intended to leave a statutory gap for the administrative agency to fill. Section 1101F's catch-all provision stating that other reasons can be considered in determining that a person is not of good moral character demonstrates a gap that Congress explicitly left for the agency to fill. And then in Chevron, the Supreme Court held, if Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency, and that's exactly what happened in this case. The Court decided that none of the enumerated standards are good for him, so he went beyond those and basically invented a new one, and we believe that's not permissible. But it says any other, you know, that there's no limitation as long as a person – I think it acknowledges that there's a million ways inventive minds can come up with criminal activity, and you can't just enumerate them all. I understand. That's exactly why the agency said that if you commit an unlawful act, that could be enough. And your argument is that joining a conspiracy but not committing the overt act is not an unlawful act. And I would say that that's what the district court has held. The district court said that an agreement which, under any standard, is not unlawful by itself, independent of any overt act, is enough to destroy good moral character. That's what the district court says, and we believe the district court was wrong. I would end with one point, again going back to the complaint, Your Honors. In the complaint, this is what the government alleges. Starting in July 2001 and continuing through October 2006, the defendant and his co-conspirators solicited and accepted payments from aliens. They have alleged that he has done that. They were overt acts committed before he was naturalized, but they were unable to prove those overt acts in court. Now they're falling back on a position that we frankly believe is not permissible. Thank you very much. Thank you. All counsel, the case is argued and submitted. We'll stand and recess at this time.
judges: Silverman, Graber, Ezra